**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000073
12-FEB-2019
07:59 AM**

NO. CAAP-16-0000073

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

THE ESTATE OF EDWARD VON BARAVALLE,
also known as EDWARD V. BARAVALLE, Deceased

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(PROBATE NO. 09-1-0664)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Beneficiary-Appellant Kyoko Kouda also known as Kyoko von Baravalle (**Kouda**) appeals from the January 11, 2016 Judgment on Order Granting Petition to Renew Letters of Administration filed on March 25, 2010 and For Instructions (**Judgment**) entered by the Circuit Court of the First Circuit sitting in Probate (**Probate Court**).[1]  Kouda also challenges the Probate Court's January 11, 2016 Order Granting Petition to Renew Letters of Administration filed on March 25, 2010 and For Instructions (**Order Granting Petition**).

Kouda raises five points of error on appeal, contending that the Probate Court erred when it:  (1) directed Kouda to turn

---

[1]     The Honorable Derrick H. M. Chan presided.

over certain real property located in Irvine, California (**California Property**) to Rodney Sato, as Personal Representative (**Sato**) of the Estate of Edward Von Baravalle, aka Edward V. Baravalle (**Estate**), because the Probate Court lacked subject matter jurisdiction with respect to the California Property; (2) directed Kouda to turn over the California Property to Sato, as Personal Representative of the Estate, because the Probate Court lacked subject matter jurisdiction to divest property belonging to an heir; (3) directed Kouda to turn over the California Property to Sato, as Personal Representative of the Estate, because a California Court had already entered a Spousal Property Order (**SPO**) determining Kouda's title to the California Property; (4) essentially ordered an heir to divest title to her property without a complaint and summons or jury trial, resulting in a pre-judgment attachment in violation of due process of law; and (5) granted Sato's September 1, 2015 Petition to Renew Letters of Administration filed on March 25, 2010 and for Instructions.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Kouda's points of error as follows:

(1 & 2) Kouda argues that, because the decedent was not domiciled in Hawai'i, the Probate Court had *in rem* jurisdiction that was limited to the property located in Hawai'i.

HRS § 603-21.6(8) (2016) provides that the Probate Court shall have the power to "[d]o all other things as provided in chapter 560." HRS chapter 560 constitutes Hawai'i's

2

implementation of the Uniform Probate Code.  See HRS § 560:1-101 (2006).  HRS §§ 560:1-301 (2006)[2] and 560:1-302 (2006)[3] set forth the territorial application and the subject matter jurisdiction of Chapter 560 providing for "Subject matter jurisdiction . . . [t]o the full extent permitted by the Constitution" to "property coming into the control of a fiduciary who is subject to the laws of this State[.]"  A personal representative is defined as a fiduciary.  HRS § 560:1-201 (2006).[4]  HRS § 560:3-715 (2006),[5] specifically authorizes the personal representative to engage in real estate transactions in "another state."  Chapter 560

---

[2]      HRS § 560:1-301 provides, in relevant part, **"Territorial application . . .** , this chapter applies to . . . (2) The property of nonresidents located in this State or property coming into the control of a fiduciary who is subject to the laws of this State[.]

[3]      HRS § 560:1-302 specifies the Probate Court's subject matter jurisdiction, in relevant parts, as:

          (a)    To the full extent permitted by the Constitution and except as otherwise provided by law, the court has jurisdiction over all subject matter relating to:

                 (1)    Estates of decedents, including construction of wills and determination of heirs and successors of decedents, and estates of protected persons;

                        . . . .

          (b)    The court has full power to make orders, judgments and decrees and take all other action necessary and proper to administer justice in the matters which come before it.

[4]      HRS § 560:1-201 provides, in relevant parts, **"General definitions** . . . 'Fiduciary' includes a personal representative, guardian, conservator, and trustee."

[5]      HRS § 560:3-715 provides, in relevant parts:

          **Transactions authorized for personal representatives . . .** a personal representative, acting reasonably for the benefit of the interested persons, may properly:

                 . . . .

          (6)    Acquire or dispose of an asset, including land in this or another state, for cash or on credit, at public or private sale; and manage, develop, improve, exchange, partition, change the character of, or abandon an estate asset[.]

provides for extra-territorial subject matter jurisdiction of the Probate Court over property coming into the control of a fiduciary. The Uniform Probate Code Practice Manual notes that "the sections [1-302, 1-304, 1-308, and 1-309] are designed to describe the probate court in terms that make it equivalent in stature to a court of general jurisdiction." Am. Law Inst. ABA Comm. on Continuing Prof'l Educ., Uniform Probate Code Practice Manual 29 (Richard V. Wellman ed., Am. Law Inst. 2nd ed. 1977) (**UPC Practice Manual**).

Here, pursuant to Kouda's declination and her nomination and request that Sato act as Personal Representative of the Estate, Sato petitioned the Probate Court to be appointed as Personal Representative. It is undisputed that Sato exercised control over the California Property in the first instance when he caused the property to be conveyed to Kouda. Although not dispositive, we note that Kouda did not object to the Probate Court's jurisdiction or Sato's control over the California Property until Sato learned that the decedent had three children who, in addition to Kouda, were heirs at law, and Sato sought the return of the California Property to the Estate for proper distribution of the Estate's assets.

Based on the provisions of HRS chapter 560, we conclude that Kouda's argument that the Probate Court's jurisdiction is limited to property within the territorial borders of Hawai'i is without merit.[6]

---

[6] Kouda also challenges the Probate Court's *in personam* jurisdiction to order her to return the California Property to the Estate. As a general
(continued...)

Kouda also argues that the Probate Court's exercise of jurisdiction infringes on the jurisdiction of California courts. Kouda cites Florida case Brown v. Brown, 169 So. 3d 286 (Fla. Dist. Ct. App. 2015), for the proposition that the Probate Court cannot order Kouda to return the property because that order infringes on California's right to adjudicate dispositions of property within its border. The Florida authorities on which Brown relies ultimately rest on Fall v. Eastin, 215 U.S. 1 (1909). See Brown, 169 So. 3d at 287 (citing Pawlik v. Pawlik, 545 So. 2d 506, 507 (Fla. Dist. Ct. App. 1989) (citing Sammons v. Sammons, 479 So. 2d 223, 225 (Fla. Dist. Ct. App. 1985) (citing Fall, 215 U.S. 1))). In Fall, the U.S. Supreme Court held that a Washington State divorce decree conveying a Nebraska property to the wife was not entitled to enforcement in Nebraska under full faith and credit because the decree constituted an *in rem* judgment directly affecting the title to realty in another state. 215 U.S. at 7-12. However, Fall also held that Washington State could act in equity to indirectly compel the husband to convey the property to the wife through the mechanisms of contempt, attachment, or sequestration. Id. at 10-12 (citing Hart v. Sansom, 110 U.S. 151 (1884) (the court may act upon the person

---

[6](...continued)
rule, when a party appears generally they waive all objection and submit themselves to the jurisdiction of the court. See, e.g., Wong Young v. Kum Chong, 24 Haw. 95, (Haw. Terr. 1917). Here, Kouda specifically joined Sato's initial "Petition for Probate of Will and Appointment of Personal Representative or in the Alternative for Adjudication of Intestacy and Appointment of Personal Representative[.]" In addition, Kouda has played an active role in the litigation of this intestacy proceeding by filing numerous documents in her own name. Indeed, the present appeal is the second Kouda has brought to this court. See In re Estate of Von Baravalle, CAAP-12-00000386, 2014 WL 7238052 (Baravalle I) (Haw. App. Dec. 18, 2014) (SDO). Kouda's argument that Hawai'i courts lack personal jurisdiction over her is without merit.

but not upon real property in another state)). In <u>Borges v. Encamacao</u>, the Hawai'i Supreme Court recognized the principle that a court can act in equity upon the person to make or cancel a real property conveyance. 20 Haw. 638, 645 (Haw. Terr. 1911) (citing <u>Hart</u>, 110 U.S. 151). HRS § 560:1-103 (2006)[7] specifically provides that the Probate Court is granted powers in equity. Therefore, we conclude that California's jurisdiction over real property within its borders is not offended by the Probate Court's order because the court acted in equity upon Kouda consistent with the aforementioned principles.

Kouda further argues that the Probate Court's jurisdiction is limited by HRS § 560:1-301 to property in the control of a fiduciary who is subject to the State's laws. Specifically, Kouda argues that the Probate Court's subject matter jurisdiction was extinguished because the property passed out of a fiduciary's control.

First, Kouda slightly misstates the statute, which refers to "property coming into the control of a fiduciary" not "property in the control of a fiduciary[.]" HRS § 560:1-301. However, property that has come into control of a fiduciary retains the status of having come into the control of the fiduciary even after it has left that control. HRS § 560:3-909 (2006)[8] specifically provides statutory authority to require a

---

[7] HRS § 560:1-103 provides, **"Supplementary general principles of law applicable.** Unless displaced by the particular provisions of this chapter, the principles of law and equity supplement its provisions."

[8] HRS § 560:3-909 provides:

(continued...)

distributee to return property to the estate that has been improperly distributed. Here, the distribution of the California Property was made prior to the Probate Court becoming aware that Baravalle had additional heirs. See In re Jones, 660 A.2d 76, 81 n.7 (Pa. Super. Ct. 1995) (noting Uniform Probate Code Section 3-909 authorizes return and redistribution where heirs emerge after distribution). Kouda initially received the entire interest in the California Property. However, Baravalle had two sons and a daughter who, along with Kouda, were heirs at law. Under the intestacy laws of either Hawaiʻi or California, Baravalle's other heirs would be entitled some interest in or on account of the California Property. See HRS § 560:2-102 (2006) (spousal share); HRS § 560:2-103 (2006) (non-spousal share); Cal. Prob. Code § 6401 (2018 West) (spousal and children's share). We conclude that the Probate Court was empowered by HRS § 560:3-909 to order Kouda to return the California Property to the Estate as an improper distribution. Therefore, Kouda's argument is without merit.

(3)  Kouda argues that the SPO is entitled to enforcement by the State of Hawaiʻi under the full faith and credit clause of the United States Constitution. Kouda did not

---

[8](...continued)
        § 560:3-909  Improper distribution; liability of distributee.  Unless the distribution or payment no longer can be questioned because of adjudication, estoppel, or limitation, a distributee of property improperly distributed or paid, or a claimant who was improperly paid, is liable to return the property improperly received and its income since distribution if the distributee or claimant has the property. If the distributee or claimant does not have the property, then the distributee or claimant is liable to return the value as of the date of disposition of the property improperly received and its income and gain received by that person.

clearly raise this issue to the Probate Court, instead only obliquely raising the argument as part of her conflict of law argument. Arguments not raised below may be deemed waived. See, e.g., Lales v. Wholesale Motors Co., 133 Hawai'i 332, 343 n.9, 328 P.3d 341, 352 n.9 (2014) (citation omitted). Therefore, this argument may be deemed waived.

Nevertheless, we consider whether, under HRS § 560:3-909, "the distribution" to Kouda "no longer can be questioned because of adjudication" in California. HRS § 560:3-909 provides, in relevant part:

> Unless the distribution or payment no longer can be questioned because of adjudication, estoppel, or limitation, a distributee of property improperly distributed or paid, or a claimant who was improperly paid, is liable to return the property improperly received and its income since distribution if the distributee or claimant has the property.

The statute limits the Probate Court's equitable power to order the return of improper distributions to an estate under certain circumstances. The statutory language "no longer can be questioned because of adjudication" appears to be unique to the Uniform Probate Code and has been interpreted to require a valid order with effective notice. See In re Hoffas, 422 N.W.2d 391, 397 (N.D. 1988).

Kouda argues that the transfer of the California Property to her can no longer be questioned because of the SPO, stating that "[a]t the time it was entered, there were no known heirs, and to [Kouda's] knowledge the [SPO] has not been appealed or set aside." This argument is without merit. Kouda does not deny that the California Property was transferred to her with the assistance of counsel retained by Sato based on the proposition

8

that she was the sole heir to the Estate and that the notice of the existing children was first given to Sato, as Personal Representative of the Estate, after the transfer to her through the SPO. Nor does Kouda deny that she had prior knowledge that the decedent had three children. Nor does Kouda argue that the decedent's children were given effective notice prior to the entry of the SPO.

It is unclear under California law whether the defective notice to the decedent's children renders the SPO void or voidable. Compare Estate of Jenanyan, 646 P.2d 196, 198 (Cal. 1982) ("trial court is without jurisdiction to make an order which has not been properly noticed, unless the right to notice has been waived") with Fisch & Co. v. Superior Court, 43 P.2d 855-56 (Cal. App. 1935) ("judgment can be nullified by the court which rendered it . . . where the judgment is regular on its face but extrinsically void for want of jurisdiction or by reason of fraud or mistake"). Here, however, the Probate Court did not declare the SPO's transfer of the California Property to Kouda to be void or voidable; rather it exercised its equitable jurisdiction to order Kouda to re-convey the California Property back to the Estate for the redistribution of the assets of the Estate in light of the existence of additional heirs at law that were not known to the Personal Representative when he, *inter alia*, caused the California Property to be transferred to Kouda.

Kouda contends that the Probate Court erred by failing to apply a conflict of law analysis, under which (Kouda asserts) California law should have applied to the California Property.

However, this argument appears to be premature, as no decision was made in the Order Granting Petition, under either Hawai'i law or California law, as to the distribution of assets of the Estate, including the distribution of the California Property.

For these reasons, we conclude that Kouda's third point of error is without merit.

(4) Kouda contends the Probate Court violated her due process rights by ordering her to return property to the Estate. Kouda asserts that, because she was not a named party in the probate proceeding, a new proceeding was required to order her to convey the California Property.

The Hawai'i Constitution provides, "No person shall be deprived of life, liberty or property without due process of law . . . ." Haw. Const. art. I, § 5. "The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res., 136 Hawai'i 376, 389, 363 P.3d 224, 237 (2015) (citations omitted). Where a party has notice and an opportunity to be heard there is not a denial of due process. Id.

Here, Sato filed a Petition to Renew Letters of Administration Filed on March 25, 2010 and For Instructions. Sato's petition requested the court order Kouda to, inter alia, reconvey the California Property to the Estate. Kouda's attorney, Junsuke Otsuka (**Otsuka**) signed a receipt acknowledging notice of hearing on Sato's petition. Kouda, through Otsuka, filed a memorandum in opposition to Sato's petition. The

memorandum presented arguments specifically opposing the return of the California Property to the Estate. Kouda personally filed a declaration in opposition to the petition setting forth factual grounds in support of the arguments presented in the memorandum in opposition. Kouda declared, "I make this Declaration in Opposition to [2015 renewal petition]." Kouda was represented by Otsuka at the hearing on Sato's petition. Thus, Kouda was not denied notice or an opportunity to be heard, and, consequently, there was no violation of due process. Moreover, the final disposition of the California Property remains undecided, pending further proceedings. Therefore, we reject Kouda's argument that her due process rights have been violated.

(5) Kouda argues that the Probate Court erred by granting Sato's 2015 petition to renew letters of administration where a conflict of interest existed between the Estate and Sato. Specifically, Kouda asserts that Sato engaged in self-dealing to the detriment of the Estate in conjunction with his acting as a broker for the sale of one of the Estate's properties and charging excessive fees.

A personal representative can be removed for cause upon a petition by a person who has an interest in the estate. HRS § 560:3-611 (2006).[9] As a surviving spouse, Kouda is clearly an

---

[9] HRS § 560:3-611 provides:

**HRS § 560:3-611 Termination of appointment by removal; cause; procedure.** (a) A person interested in the estate may petition for removal of a personal representative for cause at any time. Upon filing of the petition, the court shall fix a time and place for hearing. Notice shall be given by the petitioner to the personal representative, and to other persons as the court may order. Except as otherwise ordered as provided in section 560:3-607, after receipt

(continued...)

11

interested person. See HRS § 560:2-102. HRS § 560:3-611(a) provides, in relevant part, "[a] person interested in the estate may petition for removal of a personal representative for cause at any time." Such a petition can be filed at "any time." HRS § 560:3-611(a). The Probate Court "shall fix a time and place for a hearing[,]" meaning the hearing is mandatory. Id. Here, Kouda did not petition the Probate Court for Sato's removal as the personal representative of the Estate. Instead, Kouda presented argument that Sato in effect should be removed as part of her memorandum in opposition to the 2015 petition to renew previous issued letters of administration that were expiring due to the passage of time. The decedent's sons, Appellees-Beneficiaries Richard Takeshi Von Baravalle and Karl Kazuto Von Baravalle (**Sons**), urged the Probate Court to reject Kouda's request, to renew the letters of administration, and to resolve the issue of whether fees were properly paid or payable to Sato in conjunction with the approval of the final accounts of the

---

[9](...continued)
of notice of removal proceedings, the personal representative shall not act except to account, to correct maladministration, or to preserve the estate. If removal is ordered, the court also shall direct by order the disposition of the assets remaining in the name of, or under the control of, the personal representative being removed.

(b)    Cause for removal exists when removal would be in the best interests of the estate, or if it is shown that a personal representative or the person seeking the personal representative's appointment intentionally misrepresented material facts in the proceedings leading to the appointment, or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of the office, or has mismanaged the estate or failed to perform any duty pertaining to the office. Unless the decedent's will directs otherwise, a personal representative appointed at the decedent's domicile, incident to securing appointment of the personal representative's self or a nominee as ancillary personal representative, may obtain removal of another who was appointed personal representative in this State to administer local assets.

Estate, after Sato, as Personal Representative, provides a full accounting and documentation supporting his fee application.

Upon review of the arguments made and the record before the Probate Court, we conclude that the Probate Court did not abuse its discretion in renewing the letters of administration.[10]

For these reasons, the Probate Court's January 11, 2016 Judgment is affirmed.

DATED: Honolulu, Hawai'i, February 12, 2019.

On the briefs:

Kyoko Kouda, also known as
 Kyoko Von Baravalle,
Beneficiary–Appellant, *Pro Se*,
(Junsuke Aaron Otsuka (Otsuka
& Associates) for her on the
briefs).

Kenn N. Kojima,
for Beneficiaries-Appellees
 Richard Takeshi Von Baravalle
 and Karl Kazuto Von Baravalle.

Presiding Judge

Associate Judge

Associate Judge

---

[10] We note that the Probate Court granted Kouda some relief by ordering supervised administration of the Estate in conjunction with the renewal of the letters of administration. Our ruling is without prejudice to a petition for Sato's removal on remand.